OPINION *Page 2 
{¶ 1} Defendant-appellant, Ricky McDonald, appeals from the judgment of conviction and sentence entered in the Licking County Court of Common Pleas upon the court's verdict finding appellant guilty of vehicular manslaughter, a misdemeanor of the second degree, in violation of R.C.2903.06(A) (4), and for failure to yield the right-of-way to another vehicle, a minor misdemeanor in violation of R.C. 4511.42. The plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The instant cause arises out of a fatal automobile accident in Licking County involving the appellant and Bruce Blamer. The decedent, Estelle Booth, was riding as a passenger in Mr. Blamer's car at the time of the collision.
 {¶ 3} Appellant waived his right to a jury trial. The following evidence was adduced in the trial to the court which commenced on June 14, 2006.
 {¶ 4} At approximately 3:30 p.m. on July 11, 2005 Bruce Blamer was driving a 2000 Chevrolet Impala north on State Route 13 around Interstate 70 in Licking County, Ohio. Estelle Booth was a passenger in Mr. Blamer's car. Mr. Blamer noticed a red Chevrolet pickup truck driven by appellant heading southbound on State Route 13 make a left turn across Mr. Blamer's lane of travel. Mr. Blamer further testified that he was proceeding at "35 to 40 miles an hour." The vehicle's collided and Mr. Blamer's vehicle ended up in a ditch.
 {¶ 5} Trooper J.D. Thaxton responded to the scene of the accident and identified appellant as the driver of the other vehicle. According to the trooper, appellant stated that he was making a left hand turn when the accident occurred. Appellant further *Page 3 
told Trooper Thaxton that he did not see Mr. Blamer's vehicle. Due to a lack of skid marks from Mr. Blamer's vehicle, the officer was unable to make an estimate of the comparative speeds of the vehicles at the time of impact. However, the Trooper opined that based upon where the vehicles came to rest in relation to where the point of impact had occurred, he believed that Mr. Blamer's vehicle wasn't traveling at an excessive speed. The posted speed limit for the stretch of roadway where the accident occurred is 45 miles per hour.
 {¶ 6} Mr. Gregory Allison testified on behalf of appellant. Mr. Allison testified that he was driving behind Mr. Blamer at the time of the accident. According to Mr. Allison, both he and Mr. Blamer were traveling at between 55 and 60 miles per hour. However, Mr. Allison further testified that he told Trooper Thaxton on the day of the accident that Mr. Blamer was traveling five miles over the posted speed limit. Mr. Allison further testified that he observed appellant "come off the road, off the freeway, and then it was like all of a sudden he was turning in front of him [Blamer]. I mean, it was split second". [T. at 41].
 {¶ 7} At the conclusion of the evidence the trial court found appellant guilty of vehicular manslaughter and failure to yield the right of way.
 {¶ 8} On July 12, 2006, the trial court sentenced appellant to 10 days in jail, two years probation, a one year driver license suspension, 80 hours of community service and successful completion of grief or depression counseling.
 {¶ 9} Appellant raises the following assignment of error for our consideration:
 {¶ 10} "I. THE CONVICTION OF THE DEFENDANT-APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED BELOW." *Page 4 
 I. {¶ 11} Our standard of review on a manifest weight challenge is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 12} Appellant first contends that the evidence fails to establish that the decedent died or was even involved in a traffic accident on "July 5, 2005". Appellant supports this argument with a citation to the stipulation agreed to by the parties prior to the start of appellant's court trial wherein the following exchange occurred:
 {¶ 13} "MR. DIERNBACH: Your Honor, as we discussed in chambers, uh. . . the defense and prosecution have agreed to a stipulation of fact that, in fact, the death of Estelle Booth, in this case, was a result of the traffic accident.
 {¶ 14} "THE COURT: Which occurred on this particular date at this particular. . . ?
 {¶ 15} "MR. DIERNBACH: Out of this traffic accident that occurred on July 5, 2005 in Licking Township, Licking County, Ohio.
 {¶ 16} "THE COURT: Is that your understanding, Mr. Sanderson?
 {¶ 17} "MR. SANDERSON: Yes, Your Honor.
 {¶ 18} "THE COURT: Is there anything you wish to add to that stipulation? *Page 5 
 {¶ 19} "MR. SANDERSON: I don't believe so, Your Honor". [T., June 14, 2006 at 3-4].
 {¶ 20} It is undisputed that the accident at issue in appellant's case occurred on July 11, 2005. According to appellant because the stipulation that the death of Estelle Booth, in this case, was a result of the traffic accident which occurred on July 5, 2005 he is entitled to an acquittal.
 {¶ 21} Under the doctrine of "invited error," it is well-settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." State ex rel. Smithv. O'Connor (1995), 71 Ohio St.3d 660, 663, citing State ex rel. Fowlerv. Smith (1994), 68 Ohio St.3d 357, 359. See, also, Lester v. Leuck
(1943), 142 Ohio St. 91, paragraph one of the syllabus. As the Ohio Supreme Court has stated:
 {¶ 22} "The law imposes upon every litigant the duty of vigilance in the trial of a case, and even where the trial court commits an error to his prejudice, he is required then and there to challenge the attention of the court to that error, by excepting thereto, and upon failure of the court to correct the same to cause his exceptions to be noted. It follows, therefore, that, for much graver reasons, a litigant cannot be permitted, either intentionally or unintentionally, to induce or mislead a court into the commission of an error and then procure a reversal of the judgment for an error for which he was actively responsible".Lester at 92-93, quoting State v. Kollar (1915), 142 Ohio St. 89, 91.
 {¶ 23} Appellant may not, either intentionally or unintentionally, induce or mislead the trial court to determine the death of Estelle Booth, in this case, was a result of the traffic accident which occurred on July 5, 2005 and then seek a reversal of the judgment *Page 6 
on appeal. See Smith, 71 Ohio St.3d at 663; Lester, 41 Ohio St. at 93. Appellant had a "duty of vigilance" to challenge any misstatement concerning the date on which the accident happened at the time it arose in the trial court. See Lester at 92. Accordingly, we find that appellant cannot now argue in this court that he is entitled to an acquittal because the prosecutor misspoke concerning the date of the accident when relating to the court the agreement that the parties had reached. See Smith at 663; Lester at 93.
 {¶ 24} In addition, in the case at bar, the police report as well as the testimony adduced by both the State and the defense at trial conclusively established that the accident which caused the decedent's death occurred on July 11 as opposed to July 5, 2005. [T. at 6; 14; 20; 25].
 {¶ 25} Accordingly, appellant's argument is feckless.
 {¶ 26} Appellant next argues that his conviction was against the manifest weight of the evidence because he had the right of way since Mr. Blamer was speeding and not using ordinary and reasonable care. We disagree.
 {¶ 27} Appellant was convicted of vehicular manslaughter. That offense is set forth in R.C. 2903.06(A) and provides, in pertinent part:
 {¶ 28} "No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another in any of the following ways . . .
 {¶ 29} "(4) As the proximate result of committing a violation of any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor or of a municipal ordinance that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any provision of any section contained in Title XLV of the Revised Code that is a minor misdemeanor". *Page 7 
 {¶ 30} Appellant herein was cited under R.C. 4511.42(A), which reads as follows:
 {¶ 31} "The operator of a vehicle, streetcar, or trackless trolley intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle * * * approaching from the opposite direction, whenever the approaching vehicle * * * is within the intersection or so close to the intersection, alley, private road, or driveway as to constitute an immediate hazard."
 {¶ 32} R.C. 4511.01(UU)(1) defines "right of way" as "[t]he right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it or the individual is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or the individual's path."
 {¶ 33} Appellant directs us to the testimony of Gregory Allison an eyewitness to the crash who testified that Mr. Blamer's vehicle was traveling between 55 and 60 miles per hour in a 45 mile per hour zone. As such, appellant argues, the purportedly speeding Blamer lost his "preferential status" and was no longer in the right of way.
 {¶ 34} A driver can forfeit the right-of-way if he unlawfully operates his vehicle at a speed in excess of the posted limit or at a greater speed than will permit him to stop within the assured clear distance ahead. City of Steubenville v. Doty (Nov. 22, 1995), 7th Dist. No. 94-J-75. However, "[a] conviction for the violation of an ordinance providing that a vehicle within a street intersection intending to turn to the left shall yield the right of way to the driver of a vehicle approaching from the opposite direction, will not be disturbed on appeal, where the evidence plainly shows that the defendant in an intersection turned his vehicle to the left directly into or in front of another vehicle proceeding straight through the intersection on a green traffic light, and that although *Page 8 
such latter vehicle may have been traveling at a speed prima facie unlawful, such speed in no way contributed to the collision between the two vehicles." City of Cleveland v. Keah (1952), 157 Ohio St. 331,105 N.E.2d 402, paragraph three of the syllabus. In other words "the fact that the driver on the preferential thoroughfare forfeits the right of way by driving in an unlawful manner, does not relieve the unfavored driver of the duty to look for approaching vehicles on the main thoroughfare and to exercise ordinary care to avoid a collision."Smith v. Jones (1960), 112 Ohio App. 195, 198, 175 N.E.2d 758, 760.
 {¶ 35} In the case at bar, the trial court heard the testimony of Mr. Allison that, in addition to the speed of Blamer's vehicle, he observed appellant "come off the road, off the freeway, and then it was like all of a sudden he was turning in front of him [Balmer]. I mean, it was split second. "[T. at 41]. Trooper J.D. Thaxton of the Ohio State Highway Patrol testified that appellant told him soon after the collision that he [appellant] just didn't see the oncoming car driving by Blamer. [T. at 24]. The trial court's file further contains the appellant's written statement to the Trooper in which appellant stated that glare from the sun obstructed his vision of the oncoming car.
 {¶ 36} "The evidence indicates that appellant simply did not see the oncoming vehicle when in fact he could have and should have seen Taylor well before he did. This amounts to a failure to notice or perceive another motorist. Similar conduct has been upheld as constituting a substantial lapse from due care for purposes of R.C. 2903.07(A). See,e.g., State v. Mason (June 27, 1986), Allen App. No. 1-85-11, unreported (defendant did not see motorcyclist when turning left from apartment driveway onto street); State v. Boggs (Aug. 11, 1981), Belmont App. No. 80-B-46, *Page 9 
unreported (defendant failed to see another motorist while making a lane change on an interstate highway); and State v. Smith (App. 1978), 11 O.O.3d 343 (defendant did not see oncoming motorcycle before making a left turn at an intersection)". State v. McKeand (Sept. 29, 1986), 12th Dist. No. CA86-02-018. Further it is well settled that any contributory negligence of the decedent cannot be a defense to vehicular homicide, unless it is the sole proximate cause of the accident. State v. Langenkamp (2000), 137 Ohio App.3d 614, 620,2000-Ohio-1831, 739 N.E.2d 404, 409; State v. Garland (1996),116 Ohio App.3d 461, 468, 688 N.E.2d 557, 562; State v. Vansickle (March 11, 1992), 5th Dist. No. CA-3682; State v. McGraw (Dec. 15, 1989), Shelby App. No. 17-88-2; State v. Royer (Nov. 19, 1981), Logan App. No. 8-80-20; State v. Grant (July 21, 1993), Lake App. No. 92-L-037; Cleveland v. Calhoun (Nov. 14, 1991), Cuyahoga App. No. 59413.
 {¶ 37} Since it cannot be said that the accident was the sole proximate result of Blamer's speed, the issue of Blamer's speed as it affected his right of way is immaterial to the case.
 {¶ 38} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record, Miller v. Miller (1988), 37 Ohio St. 3d 71.
 {¶ 39} In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not *Page 10 
reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 40} The trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v.Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citingState v. Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v.Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v.Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 41} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the crimes of vehicular manslaughter and failure to yield the right of way. *Page 11 
 {¶ 42} Accordingly, appellant's convictions are not against the manifest weight of the evidence.
 {¶ 43} Appellant's sole assignment of error is overruled.
 {¶ 44} The judgment of the Court of Common Pleas, Licking County, Ohio is affirmed.
Gwin, P.J., Wise, J., and Delaney, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Court of Common Pleas, Licking County, Ohio is affirmed. Costs to appellant. *Page 1